## ROBINSON *vs.* CALLOWAY.

Under our statute, replevin may be maintained either for an unlawful taking, or a wrongful detention.
The plaintiff, to support the action, must show title.

Robinson *vs.* Calloway.

When a defendant pleads property in himself, or in a stranger, he must conclude with a *traverse* of the plaintiff's title; and the point on which the issue is joined, and upon which the jury must pass, is whether or not the plaintiff has such a title as will enable him to maintain the action.

The allegation of property in the defendant, or in a stranger, is merely inducement to the traverse of the plaintiff's title, and no issue can be formed upon it. The plaintiff cannot waive the issue as to his own title, and tender a traverse of the defendant's title.

Consequently, the plaintiff cannot recover, unless he shows title in himself; and the defendant can defeat the action, by showing title in a third person, without connecting himself with that third person. The affirmative is with the plaintiff.

Evidence that a slave belonged to a person deceased, and that the plaintiff, who is his widow, administered jointly with another person still living; that there are several heirs, and has been no distribution of the estate; that, after the death of the intestate, the plaintiff obtained possession of the negro, who has been called her own, and she has had possession of him until shortly before suit commenced, clearly shows that she has no such title as will maintain replevin.

THIS case was tried in the Pulaski Circuit Court, in March, 1841, before the Hon. JOHN J. CLENDENIN, one of the Circuit Judges. It was an action of replevin, in the *detinet*, brought by Amy Calloway, against Hardy Robinson, for a negro boy named Mordecai, who was replevied and delivered to the plaintiff below. At March term, 1841, the defendant filed seven pleas: 1st, non-detinet; 2d, property in the defendant; 3d, property in James M. Trigg; 4th, property in John S. T. Calloway; 5th, property in the heirs at law of John Calloway, deceased; 6th, property in the executors of John Calloway, deceased; and, 7th, property in the administrators of John Calloway, deceased; each of which six last pleas contained a traverse of property in the plaintiff, and concluded with a verification.

The plaintiff moved the Court to strike from the files the six last pleas; which motion was overruled; and he then joined issue to the first plea, and replied in short to each of the others, to each of which replications the defendant joined issue.

Upon the trial on these issues, the following evidence was introduced. The plaintiff proved, by her first witness, a son of the plaintiff, that she had had possession of the boy called Mordecai, ever since the death of his father, John Calloway; that she lived in Clark county; that the boy was taken away from that county in August, 1839; but witness did not know how or by whom; that the boy was about fifteen or sixteen years of age; that, for some time after his father's decease, the plaintiff and John S. T. Calloway, her son, lived together; and, when she moved away, she took the boy and several

other negroes along with her; that Mordecai was born during the lifetime of John Calloway, and while he and the plaintiff were living together in the married state, as husband and wife; and that he was the only slave of the same name or description ever in possession of his father, since his recollection; that he was born of a woman slave in possession of his father, but was understood to be, and was called, the plaintiff's slave; that John Calloway died six or seven years ago, and left fourteen children, of whom eight or nine were still living; that the plaintiff had hired the boy out, and lent him to John S. T. Calloway, to go to mill; and that he was worth six or seven hundred dollars.

Green D. Davis stated, that he had lived in Clark county, three or four miles from the plaintiff, whom he had known for twenty years. Has seen the boy at the plaintiff's. Witness' brother hired him awhile of the plaintiff; once and awhile, Peter, a son of the plaintiff, now deceased, claimed him as his property; that John Callaway died seven or eight years ago, and plaintiff has exercised ownership over him since her husband's death: he did not know whether the title was in the plaintiff or not, nor of his being in possession of any other person; that plaintiff and John S. T. Calloway lived together for some time after John Calloway's death; before whose death, the boy was in his possession, and he (John Calloway) exercised ownership over him.

The Sheriff of Pulaski county then identified the boy, and proved that he would hire for ten dollars a month. Upon this testimony the plaintiff rested.

The defendant's evidence is not necessary to be stated.

The plaintiff then read in evidence a copy of letters of administration granted to her and John S. T. Calloway on the 6th day of January, 1835, by the Clerk of Clark county. She then offered to read a paper commencing as follows: "Appraised bill of property of the estate of John Calloway, deceased. We, Adam Stroud, Archibald Huddleston, and David Mosby, appraisers of the estate of John Calloway, deceased, do appraise the property as follows, to wit:" Then follows a list of eleven negroes, with the price of each, among which was, "1 boy, named Mord., $300." No affidavit or certificate

Robinson *vs.* Calloway.

was appended to the list, nor was it signed by any person; but following it was the certificate of the Clerk of Clark Probate Court, that it was a true and complete transcript of the original appraisement bill, on file in his office.

The plaintiff then recalled the plaintiff, Davis, and he was permitted to state that the boy was sometimes called Mordecai, and sometimes Mord.

Upon the evidence, the Court, on motion of the plaintiff, instructed the jury, among other things, that if the defendant has shown title to the boy in question, to be in any person or persons other than the said plaintiff, unless they believe from the evidence that the defendant, Robinson, derives title from that other person or persons, they must find for the plaintiff.

To which the defendant excepted, and moved the Court to instruct the jury.

1st. That if the defendant has pleaded property in a third person or persons, and proved it, he is by law entitled to a verdict and judgment for the return of the property; and,

2d. That if the legal title to the slave remains in the estate of John Calloway, deceased, and not in John S. T. Calloway or his assigns, still they could not find for the plaintiff, because she has commenced suit alone.

The jury found for the plaintiff, and assessed damages in the sum of one hundred dollars, for which judgment was rendered, and Robinson sued his writ of error.

In this Court several questions were argued, which are not necessary to be noticed.

*Pike,* for the plaintiff.

The plaintiff was bound under the issues to prove property in herself. Where a plea concludes with a traverse, the plaintiff must reply to and take issue on the *traverse,* and not on the inducement.

If there is a traverse in the defendant's plea, of a point material to the plaintiff's title, the replication must re-assert the fact, and conclude to the country. For, as there is a complete issue formed by the

13

negative and affirmative, the plaintiff cannot decline the defendant's traverse, and offer another traverse to some other point in the defendant's plea. And hence results the general rule, that there can be no traverse upon a traverse, where the first traverse is material; since, if this were allowed, there might be many successive traverses, and thus the parties might never come to an issue. However, if the plea concludes with a special traverse of the *time* and *place* in the declaration, the plaintiff may either join in the traverse, or traverse the inducement. This is an exception. *Story on Pl.* 57. *Digby vs. Fitzharbert, Hob.* 104.

So it is laid down, that where a plea confesses and avoids the material facts in the declaration, there must not also be a traverse, *because it shall not be in the power of the party, by adding a traverse, to prevent the other party from denying the facts which avoid his title.* 1 *Saund. R.* 22, *n.* 2; *ib.* 209, *n.* 8; *Oystead vs. Shed,* 13 *Mass.* 522; *Stephen,* 227. *Anon.* 3 *Salk.* 353; *Gould* 400.

The issue on each of the six last mentioned pleas in this case, having been made up in short, each " replication in short," was necessarily a replication to the traverse; and the issue on each of the six pleas was precisely the same. The affirmative in each was with the plaintiff, and her allegation was, " property in herself." This she was bound to prove.

It was a proper issue. Our statute has made certain provisions as to the pleadings in replevin. Among them are, that the defendant shall be entitled to the same pleas in abatement and in bar, as heretofore, and with like effect; and may plead as many several matters as he may think necessary for his defence. *Rev. St.* 664, *sec.* 32. And it also provided that the general issue in replevin in the detinet shall put in issue not only the wrongful detention, *but also the property of the plaintiff therein. ib. sec.* 34.

A defendant may either deny the title of the plaintiff, and conclude to the country, or state his own title, and conclude with a traverse. And a plea of property in a stranger is good in bar or in abatement, and entitles the party to a return without an avowry. *Harrison vs. McIntosh,* 1 *J. R.* 380.

The general issue of non-cepit, in the case of a wrongful taking, puts

in issue not only the *taking*, but the *place*, if material; and in case of a wrongful detention, the general issue of *non-detinet* puts in issue not only the *detention* of the goods, but the *property* of the plaintiff—and the distinction so made between the effect and operation of the general issue, in the cases of *non-cepit* and *non-detinet*, is in analogy to that existing in the actions of trespass and trover. The defendant in replevin may plead property in himself or in a stranger, in bar of the action, or property in himself and the plaintiff, or in a stranger and the plaintiff; and all these different pleas are obviously founded upon the principle, that the plaintiff, as in trover, must recover upon the strength of his title to, or property in, the goods in question. It is obvious that the material fact in dispute, and substantial issue, raised on all pleas of property in replevin, is, *property in the plaintiff.* They all tend to deny and disprove this, and are valid defences for that reason. From this, it is said, results the rule, that " in pleas of property in the defendant or third person, as the case may be, such fact must not only be alleged, but the defendant must also traverse property in the plaintiff." The title to the property stated by the plea, is only by way of inducement to the traverse. *Rogers vs. Arnold*, 12 *Wend.* 30.

The question is not as to the *absolute ownership*. Right to the possession, and dominion of the goods for the time, are all that is essential. As the possession of a chattel is *prima facie* evidence of right, a mere stranger cannot deprive the party of that possession, without showing some authority or right derived from the true owner, to justify the taking. Upon the issues, it is not material that the defendant should prove title to the property as set forth in any one plea, as that is only inducement to the traverse of the plaintiff's title, and need not be, and was not, denied in the replication. Upon the issues, the plaintiff was bound to prove and maintain an *exclusive* right to the possession and control of the property. *Rogers vs. Arnold, ut sup. Bemus vs. Beekman*, 3 *Wend.* 667. *Lady Chichesly vs. Thompson, Cro. Car.* 104.

The substance of the issue thus joined, is, whether the plaintiff has such a property as will maintain replevin, or whether the person named in the plea has such a property as will defeat it. The inquiry is, where was the right of possession? The pleas are good, *and would*

*entitle the defendant to a return, without connecting himself in title with the persons in whom he alleges an outstanding title to be.* *Prosser & Petrie vs. Woodward,* 21 *Wend.* 205. *Simpson vs. McFarland,* 18 *Pick.* 430. *Salkold vs. Skelton, Cro. Jac.* 519; *Presgrave vs. Saunders,* 2 *Ld. Raym.* 984.

Where there are several executors or administrators, they must all be joined, though some be under seventeen, or have not proved the will, or have even refused. *Webster vs. Spencer,* 3 *B. & A.* 363, 96. Executors or administrators hold property as trustees; and where there are more than one, it is a *joint* trust. It is not necessary to produce authority, to show that neither of them can have the *exclusive* right to the possession and control of the property. The fact that the plaintiff had been in the possession of the negro after the death of her husband, proves nothing as to the right of exclusive possession. Without the letters of administration, she showed that she had had possession; but she destroyed her case when she produced those letters.

An executor or administrator could not maintain replevin at common law. They are allowed to do so, by the statute; but we apprehend that they must sue in that capacity. Here the plaintiff sued in her individual right, and then proceeded herself to show that she and a third person, as administrators, alone were entitled to sue.

*Ashley & Watkins,* contra.

*By the Court,* LACY, J.

It is perfectly clear, under our revised statutes, page 659, that this action may be maintained for an unlawful taking, or a wrongful detention of a personal chattel. The plaintiff, to support the action, must show title: he has no right to a recovery unless he has been injured, either by an invasion of his right of property or his right of possession. The pleadings in the action are peculiar, but they are nevertheless founded in justice and policy. In this case, the defendant pleaded " non-detinet," and " property in himself and other persons." Issues were formed upon these pleas: the inquiry now is, what are the parties respectively bound to prove?

The declaration alleges title in the plaintiff. This is a mate-

rial fact; and when the issue is joined upon it, must necessarily decide the cause. When the defendant pleads any matter inconsistent with this averment, as property in himself or in a stranger, of course he is compelled to conclude with a traverse of the plaintiff's title.

The point upon which the issue is joined, and upon which the jury must pass, is, whether or not the plaintiff has such a title to the property as will enable him to maintain the action.

The allegation of the defendant, of property in himself, or in a third person, is merely inducement to the traverse of the plaintiff's title, and, therefore, no issue is formed upon that fact. The plaintiff is not at liberty to waive the issue of his own title, and tender a traverse of the defendant's title. To admit him to do this, would be to establish a rule in pleading that would run contrary to all established precedents, and produce endless prolixity.

In replevin, as in all other actions, it must appear by the declaration, that the plaintiff is the injured person. It would be idle to charge the defendant with unlawfully taking or detaining the plaintiff's property, unless he had title. The possession of a chattel interest carries with it the presumption of ownership or right of possession; and neither of these can be interrupted or disturbed, unless the party claiming it shows that he has a superior, paramount title. The authorities are full and conclusive upon this point. 1 *Saund.* 22, *n.* 2; 1 *Chitty,* 592; *Com. Dig. Plead. S.* 14; *Lady Chichesly vs. Thompson,* Cro. Car. 4; *Rogers vs. Arnold,* 12 *Wend.* 33. In *Prosser & Petrie vs. Woodward,* 21 *Wend.* 207, the whole doctrine will be found fully examined and decided in exact conformity with the principle here stated.

These principles clearly show that the plaintiff was not entitled to recover, unless she showed title in herself, and that the defendant could defeat the action by establishing it in another. The plaintiff was bound to recover by the strength of her own title, and not by the weakness of her adversary's. She held the affirmative of the issue; and, unless she proved her own title, she had no right to recover. These principles are perfectly obvious, and their application to the instructions given to the jury by the Judge who tried the cause, proves he was mistaken in regard to the law governing the case be-

fore him.  The facts contained in the record, so far from proving title in the plaintiff, expressly disprove the claim.

The Court instructed the jury, that, "under the issues joined, if the defendant proved property in a third person, other than himself, he was bound to show that he derived a valid title from that third person, in order to defeat the plaintiff's right of action."  This instruction was evidently erroneous, and expressly contradicts all the established rules of pleading upon the subject, and also our own statute. *Rev. St. sec.* 34, *p.* 664.  The Court refused to instruct the jury that "if they believed, from the evidence, that the title to the slave in dispute, was in the estate of John Calloway, deceased, the plaintiff had no right to recover."  In refusing to give this instruction, the Court also erred.  It is perfectly manifest, that if the administrators, or the heirs of John Calloway, deceased, had title to the property, an action could not be maintained alone in the name of the widow.  The plaintiff's right to recover, depended upon her title; and if the proof showed the title out of herself, and vested it in others, she certainly could not maintain the action.  The whole proof in the cause, in our opinion, clearly established these facts:  The slave mentioned in the declaration, is shown to be the property of John Calloway, in his lifetime, and that the plaintiff in the action, is his widow; that, upon his death, he left a number of children, several of whom are now living; and that Amy Calloway, with John S. T. Calloway, administered upon the estate of her deceased husband; that there was no legal distribution of the assets of the estate among the heirs or representatives; that, after the death of John Calloway, the plaintiff retained possession of the slave; that he was considered and called her property; and that she exercised acts of ownership over him, until a short time before the commencement of this suit, when he passed into the possession of the defendant.  This evidence, so far from establishing title in the plaintiff, clearly negatives any such idea.  As the wife of John Calloway, she held no property separate and apart from her husband, during her coverture.  That, upon his death, she was only entitled to her distributive share of his estate; and the fact of her claiming the boy as her own property, and its being so regarded by others, could not vest in her either a legal or equitable title.  She brings this suit in her own

name, and rests her claim upon her own title and interest. By her own showing, she has no title or pretext of title. If the property belonged to the estate of John Calloway, at the time of his death, then it must either have vested in his administrators, or in his legal heirs and representatives. If the administrators had title, they of course should have both joined in the action. If their right to the property, or to the possession of it, had been divested by distribution, or otherwise, then the action would only lie in the names of the heirs or legal representatives, or in the names of those in whom the legal interest was vested. Here, Amy Calloway's title rests upon the mere assertion of a naked right, without title, accompanied with possession; which is not shown to be adverse to the other heirs or legal representatives: and, of course, having established no separate right or claim in herself, she is not entitled to a recovery.

This view of the case supersedes the necessity of our examining or deciding the other points raised upon the record, with regard to the defendant's proof. Amy Calloway, having shown no title, according to the doctrine well settlled in actions of replevin, she is not then authorized to disturb the possession of the defendant.

Judgment reversed.